We'll hear argument next in Case No. 14-462, DirecTV v. Imburgia. Mr. Landau. Thank you, Mr. Chief Justice, and may it please the Court. The Court below violated the Federal Arbitration Act by refusing to enforce the party's arbitration agreement on grounds the Ninth Circuit characterized as nonsensical. The agreement provides for individual arbitration and expressly precludes class arbitration. And just to underscore that point, it specifies that if State law would force the parties into class arbitration, then the entire arbitration agreement would be unenforceable. The Court below interpreted the reference to State law to mean inoperative State law preempted by the FAA. But neither Respondent nor the Court below identified a single case in the history of California or American law adopting that interpretation for any contract, and it would be particularity. Breyer. You have a problem that this is California law and a California court said that's what the contract means under California law. In other words, I can't find a case that we're supposed to say, or we have the power to say, that they're wrong, even if they were to say the words, do not turn on the light, mean turn on all the lights. So they may have done that in this case. Nonetheless, what do we do about it? What you do about it is look to the Federal Arbitration Act. There is not a general Federal Contracts Act, but there is a Federal Arbitration Act that Congress passed specifically because a particular kind of contract was not getting enforced by the courts, and Congress was concerned about that. So what Congress ---- Sotomayor, the principle of contract interpretation, I beg to differ with Justice Scalia. The — I thought that what the Court asked itself is, what did the parties intend when they used the words, State law? Correct. Is that correct? That's what the Court purported to answer. That's the interesting part. You used the word purported. What California law did it apply that disfavors arbitration? What contract principle did they use? Well, again, a lot of cases you have courts that are bringing in some principle external to the contract, and those are kind of easy cases. This Court has now made clear that courts can't rely on principles external to the contract that are hostile to arbitration. But courts also under the Federal Arbitration Act have a responsibility to enforce the contract according to its terms with a reference to the Federal substantive law. For more than 50 years, the Court has made clear that the Federal Arbitration Act creates Federal substantive law. What is the content of that Federal substantive law? Well, it was the point of putting State law in it all. If Federal law applies, then it makes no sense to have any reference to State law. If State law means State plus Federal law, and Federal law becomes State law, the reference to State law is just inexplicable. No, Your Honor. It's to the contrary, Your Honor, with respect. The reference to State law was a recognition of the concern, the problem that the parties were confronting, which is State laws were being enacted, as in California, in their Discover Bank rule, that would force the parties into class arbitration against their will. Scalia, at the time this contract was made, that those laws are invalid. Precisely, Your Honor. And so at that point, the problem they were focusing on was State law. They could have also said, you know, if this is unenforceable or use the passive voice. But here they chose to take the bull by the horns and be honest about what was actually the problem, and they said State law. But the use of the term State law does not indicate a recognition or a desire to have inoperative State law that's been preempted by the Federal Arbitration Act. As the Ninth Circuit said, that was not the case. Kennedy, I'm still not sure that I understood your answer to Justice Breyer's question. His question was, this Court purported and did give an interpretation of the intent the two parties had when they entered into a contract, and that is a matter of State law. Your Honor. I understand the problem of preemption. I understand the problem that preemption is that a judicial decision is retroactive. This was not the State law. But let's assume that the trial court and the California or the California appellate court said the intent of the parties was to interpret the law to mean a, and a meant this superseded or preempted State law. How can we reverse that determination if it's a matter of State laws interpreting a contract made by two people? That was the question, and I'm not quite sure what your answer is. I'm sorry, Your Honor. I'll try to be as clear as I can. The answer is because you wouldn't go any further if you didn't have something called the Federal Arbitration Act. And the Federal Arbitration Act says that this particular kind of contract, an arbitration agreement, is not solely a question of State law. There is Federal substantive law created under the Act. To be sure, as this Court said in Volt, and I'm quoting from Volt, the interpretation of private contracts is ordinarily a question of State law, which this Court does not sit to review. And we have no quarrel with that proposition. But the key word there is ordinarily. And this case shows that ordinarily does not mean exclusively, because the Court in Volt went on to say, and I think this is critical, and I think you could quote this passage from Volt and be finished with this case, it says, In applying general State principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the Federal policy favoring arbitration and ambiguities as to the scope of the arbitration. Alitoso, does that mean that whenever there is a dispute about the scope of an arbitration clause and a State court says that it includes a certain subject or doesn't include a certain subject, that there is then a question of Federal law, because insufficient weight has been given to the presumption of arbitrability? Yes, Your Honor, there is a Federal question. Again, ordinarily, you start out with the proposition that contracts are governed by State law. And we should be very — let me be very clear. We are not by any means saying that the Federal Arbitration Act federalizes this entire area. We are kind of saying the opposite, that it generally is a matter of State law, but there is a Federal toll. So you always have a Federal question to be a check on the State court's application of law for cases like this, when it is perfectly clear what is going on. Well, this may be an extreme case, but where — how do you define the borderline? Well, again, Your Honor, I think in the average case, the State court can interpret State law as it sees fit. But then this Court's responsibility in reviewing State law, and this Court obviously can decide what cases it wants to take to review State law, has — this Court's responsibility is to basically do what Bolt said it would do, which is did the State court, in applying State law principles, give due regard to the Federal policy favoring arbitration and construe doubts in favor of arbitration? And I found no case ever that's done that, and I have exactly the same problem that Justice Alito has. I mean, once we start with this case, even if this is not too difficult under State law, we've got every arbitration contract in the world where one lawyer or another will suddenly be saying, oh, the interpretation of the contract here by the State court judge is not favorable enough to arbitration or hostile to the Act, and suddenly we have Federalized, if not every area, a huge area of State contract law. Now, there's another way to do it. We could just ask the California Supreme Court. Now, what about that? Or come up with an answer to what Justice Alito just asked. No, Your Honor. Again, you wouldn't ask the California Supreme Court, because ultimately this is a Federal law question. Breyer. Why not ask? No. Ultimately, it's a State law question. What does the contract mean? And the contract, reading it, seems to mean that it applies to laws that are laws, not laws that have been held unconstitutional. So what I've looked at, I've looked at the civil rights cases, for all kinds of cases, I can't find any. Even if this case came from the California Supreme Court, and the California Supreme Court said, we — again, it has never done that, and that's one of the odd things about this case. But even if the California Supreme Court were to say, we as a matter of California law say that this, you know, State — a reference to State law means preempted or repealed or otherwise inoperative State law, again, I think that's hard to imagine, but let's say they said that, you as the Supreme Court of the United States would still have a responsibility to make sure that that comports with the Federal policy favoring arbitration. Breyer. Well, maybe that's so, but if the California Supreme Court had said this, I would look at the — they would read the contract as if it said, if there is a law in the State of California, a State law, or if there ever has been, whether that law is constitutional or not constitutional, whether it violates the Supremacy Clause or not, if they ever wrote those words in the State legislature into a law, there is no arbitration contract. Okay. I guess parties have the right to do that. And if the California court said, as a matter of California law, they did it right here, I don't know that we'd have a ground to stand on. And that's, Your Honor, where, respectfully, the Federal arbitration — again, vote. Scalia. But you need a test, Mr. Landau. You're — I sympathize with Justice Breyer's point. You need some test. Your Honor. Where does it stop? We're going to reinterpret every State interpretation of State law that ends up invalidating an arbitration agreement? Absolutely not. So what's the test? The test is the test. Can't you say that at least in this case, where the State court's interpretation flouts well-accepted, universal contract law principles, the most important of which is you interpret a contract in a manner that makes it valid rather than invalid. And they went out of their way to interpret this in a manner that causes the whole agreement to be thrown out. Correct, Your Honor. That is why this is— So give us a test. Say that, you know. The test— You don't have to go any further than that, where it flouts standard contract interpretation principles. Well, certainly, Your Honor, that is clearly one way to look at it. Do you really think that the parties here — this is something that I don't know whether to quarrel with or not. The California court said, we don't know what the parties even thought about preemption. And it was three years into litigation that preemption was settled by this court. Do you really think they would have said, that one of the parties would have said, your adversary, oh, yes, now I'll go into arbitration after three years of litigation? Absolutely, Your Honor, because the only reason that they were not arbitrating from the get-go was because— Was because California law said you don't. Correct. That's what they wanted. And if California law said no, they wouldn't. Right. And so once it is clear that the thing that would have forced them into class arbitration is gone, either because the California court repealed it or because this court held it to be preempted, then, again, it's nonsensical to say— But when they entered the agreement, both parties contemplated that State law meant California law. That's why you did not object to the lawsuit being brought in court. So the parties' intent at the time they entered the agreement and at the time the lawsuit in court was started was clear. The parties intended that the arbitration agreement would be out because the no-class action was unenforceable in California. That's what they intended at the time they made the contract. Isn't that so? No, Your Honor. What they intended was that this would turn by reference to State law. At that time, State law was, as Your Honor describes. You are absolutely correct. But they didn't say if State law as it exists today requires arbitration. In other words, there's nothing in the contract that freezes this in a particular point in time that takes a snapshot. If we're trying to find out what the parties meant, why wouldn't we look to see what they meant at the time the contract was formed? Well, because, again, it's what the contract that they chose used an important verb. We've been talking a lot about the noun in the sentence, the clause, the law of the State, but then the verb says if the law of your State would find, not if the law of your State today finds. And imagine, Your Honor, if California had repealed its CLRA, which has the anti-waiver provision that they are relying on. Well, I don't think anybody would say, well, because the CLRA was in effect at the time this thing was enacted, that if the CLRA is later repealed, we still have disclaimed arbitration. So, Mr. Landa, let's assume you're right, that this is a really bad mistake when it comes to arbitration. So just to take you back to Justice Alito's point and Justice Scalia's point, you know, usually we don't fix bad mistakes when State courts interpret State law. I mean, there are a lot of mistakes when it comes to interpretation of contracts, including arbitration agreements. So, again, what's the standard? There's nothing on the face of this opinion that indicates hostility to arbitration. To the extent that you can find reasoning in this opinion, which you have to search to find, but to the extent that you can find reasoning, it's about interpreting form contracts, interpreting whenever you see an ambiguity in a form contract, you interpret it against the drafter. And that's a principle of contract interpretation that, as far as I can see, has been used hundreds of times in California. It appears to be a very common principle of contract interpretation in California whenever California courts look at a contract of adhesion. So why isn't that just what they did and is what they did? Fair enough. But even by its terms, the predicate for that is some ambiguity. You can't just say, well, guess what, contract of adhesion, immediately we go to constraining against the drafter. You have to have an ambiguity. There's no antecedent ambiguity, and the Court really didn't identify anything other than the totally question-begging assertion that the general — the specific governs the general. Again, Your Honor, I want to be very clear here. Our rule is very narrow, and this Court does not have to go any further than it went in Volt to say generally contract interpretation, even if it's erroneous, is a matter of State law. But — and we're not saying that every mistaken contract interpretation gives rise to a Federal question. What we are saying, though, is just that the Federal court's role is to make sure, to look at what the State court did and say, can we see that this court gave effect to the healthy Federal policy regarding arbitration and construe doubts in favor of arbitration? Here, you see the opposite. And, you know, with respect, Your Honor, you can't see on the face of it that they say it's hostile, but this is the year 2015. Sotomayor, people are a little — excuse me, Your Honor. How do we draw the line between wrong and the standard you're arguing? Your Honor, again, I think — I was quoting to you the language from Volt. That has worked for the last 30 years that it's been on the books. I think this case, again, is not a great case for saying how wrong does wrong have to be. I mean, clearly, here it's nonsensical. Again, I think there may be cases that will have — and I think you have a standard. If I were to come up — I could use other words like unreasonable or manifestly wrong. Breyer, I'm back to my point. I looked in the civil rights cases, South Pass statute after statute, like the sit-in statutes and so forth, trying to prevent the Equal Protection Clause from being implemented. So I looked a few of those out in my law clerk act. In none could I find the court saying this matter of State law, where it isn't itself unconstitutional, you know, what is a trespass and so forth. It violates the Federal law. What they'd say is we interpret the State law. They've gone that far because we think the State would interpret the State law this way. But I can't find an analogy to what you're saying. Well, again, Your Honor, we'd have to say an interpretation of a contract, where that interpretation is, is what? Please go back to Volt. Is what? I'm looking for the standard. It is not the standard. You read me the words. It didn't say what to do. Okay. It said they have to conform with Federal law. Well, no, it said they must read it with a — with the — That looks like we're the supervisor of all State contract interpretation, Judge. No, Your Honor. Again, again, what Volt says is ordinarily it's a question of State law. Your role is under the Federal — there is substantive Federal law under the Federal Arbitration Act. That has been clear and established for more than 50 years. The State — the Federal Arbitration Act applies in State court. That has been clear for more than 30 years. If you say — My other suggestion, we're not going to make too much progress on finding the standard, but California does accept requests from us or other Federal courts to explain what California law is. I've looked at that statute. And if this is so outrageous as a matter of contract interpretation, State law, why don't we just ask them? Because, again, Your Honor — They have not considered this case. They denied certiorari over the — And that's a — — the one of the justices. And — but, again, what Your Honor's role is, is to interpret this as a matter of Federal law. So the — again, it would go away if they were to change the rule as a matter of State law, but ultimately the Federal issue is always present here. The Federal — again, there's always a Federal issue just to make sure that the State court hasn't gone too far. Again, I understand exactly what the Court is grappling with, that where do you draw the line on where it goes too far? Again, our point is this case is so far on one side of the line. And, Justice Breyer, to go back — Scalia Give us all the reasons why this case is on the wrong side of the line. Justice Breyer has mentioned the rule of contra preferentem, that you interpret a contract against — against the person who drafted it. Now, that's on the other side. What are — what are the points of contract law that — that so clearly outweigh that? Clement I think, Your Honor, you started out by one that you want a contract to be valid. They went out of their way to look to a way to make this unenforceable. And if you just take a step back and look, it is — Sotomayor What unenforceable? Clement The arbitration agreement. Sotomayor No. The arbitration agreement was enforceable in lots of situations. Clement No, Your Honor.  There was no agreement to arbitrate class actions. Clement Right. But there — Sotomayor But there was no agreement to arbitrate other disputes. Clement That's not their — Sotomayor And single disputes. Clement Their position is that the arbitration provision is entirely unenforceable in this case. This arbitration provision is entirely unenforceable with respect to California. Again, what is going on here? It's clear the party says we want to arbitrate our disputes unless State law forces us into arbitration. Once State law can no longer force you into arbitration, they don't have any plausible narrative for why the parties would have agreed to blow up and jettison their arbitration rights if nobody is actually forcing them into arbitration. Breyer Can you go back, Justice Scalia, please, what I understood this to be? Is one reason this interpretation, from your perspective, is an unreasonable, really weird one, is because the statute basically says go to arbitration unless you are in a State where the law would require class arbitration. And if that's the State you're in, dump the whole arbitration business. Okay? Now, one reason that's a bad interpretation is that probably what they meant is valid State law. Clement Of course. Breyer All right. That's one. Clement Right. Breyer Now, is there any other? Clement There's another one, Your Honor, that in Section 10 here, there's a choice of law provision specifically addressing the arbitration clause. And the general choice of law provision is in Section 9 of the agreement. But, excuse me, in Section 10, but it says, notwithstanding the foregoing, in other words, the fact that State law and FCC law, other law applies, with respect to the arbitration provision, the FAA shall govern. So our position is it is nonsensical to say that when the contract goes out of its way to say the FAA shall govern the arbitration provision, that you would take a reference to the law of your State in the arbitration provision and say the law of your State completely unaffected by the FAA. Everyone else has a right to say that. Kagan So, Mr. Landau, I completely take your point as to what the parties must have wanted. And it does make this State court opinion unsatisfying would be a kind word for it. But, you know, in fairness to the State court, part of the problem was the way this contract was worded. Everybody else finds ways to word contract provisions like this so that there isn't a problem. If the contract had said, you know, if class action waivers are invalid in your State, then Section 9 is unenforceable, there would not have been this problem. This is — it's a very unusual contract provision. Most companies use very clear ones. This one did not. And so the State court had to sort of puzzle over what it meant. And as you say, probably got the answer wrong, strike the probably, got the answer wrong. But, you know, wrongness is just not what we do here. Landau Your Honor, but again, wrongness is not what you do here, but this is an arbitration contract. And again, I think this is why you have to do it. Breyer You draft this provision, Mr. Landau. Landau I did not, Your Honor. But, again, I am not defensive about the way this is drafted. They said State. Ginsburg How was the provision changed? Now, this provision is no longer in direct TV contracts, is that right? Landau That's correct, Your Honor. Ginsburg And what — what — it was taken out and what was put in instead? Landau The new provision, Your Honor, which I have here, it says — it just — it takes out the word State law and just says if this is unenforceable. And, again, but the reason it said State law was not to suggest that inoperative State law should just do it. It was recognizing the fact that the evil against which it was — the clause was being put in was State laws that would force you into class arbitration against your will. Ginsburg Do we have — do we have someplace that has the change that was made in the language of the contract? Landau I do, Your Honor. I have the new — here it is, Your Honor. The current version of the direct TV contract says a court may sever any provision of section 9 that it finds to be unenforceable except for the provision on class representative and private attorney general arbitration. That's in Respondent's brief on page 36. Again, I'm not saying there aren't other ways to write it, but the fact that there are other ways to write it doesn't mean that it's ambiguous. And, again, that — I'm sure this Court construes many statutes that could have been written in other ways, but that doesn't make them ambiguous. The point — let me just please underscore one more point.  The law of your State as governed by the FAA, if that had been in section 9, then they would have had no problem with this enforcing the arbitration provision. But it does say that. It just says that in section 10. Section 10, the choice of law provision, specifically says that the FAA shall govern section 9, the arbitration provision. The law of your State language in section 9 is governed by the FAA. So, in fact, it is right there on the contract. And, again, at the end of the day, we know that Congress had a — Congress was concerned because of this kind of gimmick, where courts were coming up with strained interpretations to avoid enforcing arbitration provisions. This is FAA 101. We are not asking this Court to make any new law, but just to reinforce what you said in Volt, which is ordinarily it is a matter of State law. And, Your Honor, Justice Breyer, you said that you couldn't find any case. Well, Volt is a case where the Court went on to examine. The Court didn't say, we defer to California State law and it is therefore unassailable to use the words that Respondents put. To the contrary, Volt said, we are going to consider the interpretation proffered by the State court and decide whether we think it is consistent with the Federal policy favoring arbitration in the FAA. So there is a Federal component. It isn't limited to Federal. Kagan. The Volt says the law of the place, interprets the law of the place exactly in the way, or allows that interpretation exactly in the way that this State court interpreted it. The law of the place was just the law of the State unmodified by any possibly preempting Federal law. Right. But in Volt, of course, the issue in Volt was that the court there did not refuse to enforce arbitration. The Volt court said, you know, we don't have a problem with this because this is all about the efficient process in terms of arbitration. And the Volt court went out of its way to say, we find that this favors the Federal policy fostering arbitration. And the court reiterated that specific interpretation of Volt and insisted on it in Mastro Buono, Casarado, and Preston. In other words, Volt took pains to say that the interpretation that we upheld there was a pro-arbitration provision that gave effect to the Federal policy favoring arbitration. I would like to reserve the balance of my time. Roberts. Thank you, counsel. Mr. Goldstein. Thank you, Mr. Chief Justice, and may it please the Court. This case is a reprise of Oxford Health. The argument of the party that wanted arbitration in Oxford Health is that the arbitrator had just gotten it terribly wrong under this Court's decision in Stolt-Nielsen. And this Court may well have had sympathy for that. But the Court realized that it was going to actually have to write an opinion about the case, an opinion that the lower courts were going to have to apply in later cases. And the difficulty is that if you interject Federal law here, you are going to have just a wealth of Direct-to-be challenges. Because in every instance in which the State court announces, here's how we understand this language, which is State law language in our contract, it will be open to the party proposing arbitration to say, no, actually, if there is an ambiguity in the law — excuse me, in the contract, then you are obliged to apply a presumption in favor of arbitration, and this is always a Federal question. Roberts. Well, but that's if — that may be a problem with the FAA. But the FAA was adopted because State courts were hostile to arbitration and Congress didn't like that. Now, how were they hostile to arbitration? They were hostile to arbitration by adopting special rules of contract interpretation that disfavored arbitration. And in those instances, what the FAA says is that — that's what they wanted to stop, special rules of contract interpretation, ordinarily a matter of State law, but not when it's hostile to the FAA. And what could be more hostile to the FAA than to interpret a phrase that says nothing about the FAA, to dispense with our holdings about, as they came about, our holdings about what the FAA has to say, and to do that even though there's a provision in the contract that says this is governed by the FAA? So in other words, I understand — I'm sympathetic to the notion that this is a matter of State contract interpretation, but that is precisely what the FAA was getting after, State judges interpreting contracts under special rules hostile to arbitration. So, Mr. Chief Justice, if I could deal with your real concern about where this statute comes from, the idea that this is kind of the core discrimination against arbitration that this statute is after, kind of structurally, and then what exactly happened in this case. The root of the FAA, and it's reflected in the statutory text, it's in section 2, is that State courts were adopting doctrines that were hostile to arbitration. Discover Banks, one of them, this Court concluded. What the FAA is not concerned with, and Congress could well pass a law that would be, is the threshold question of whether there is an arbitration agreement in the first place. That is, we have been unable to locate in this Court or any other Court a time when the courts overturned the determination under State law whether the parties had agreed to arbitrate val non. That's an antecedent question. It may well be that Congress could conclude that there is a problem like that and adopt a statute like it. But to do that here is to really open up an enormous can of worms. What you have is the ---- Scalia, I'm not sure that I understand what you're arguing. You're arguing that the FAA does not cover State gimmicks that disfavor arbitration so long as what they say is there is no arbitration agreement in the first place. No, Justice Scalia, don't misunderstand me. If the Court were to conclude ---- That's what you said. I apologize, then. If the Court were to conclude that this is just an effort to discriminate against arbitration, then I think the Court has doctrines and the lower courts have doctrines. We are not saying that you have to turn entirely a blind eye to the idea and let a State court get away with anything. My point is different, and that is that this is not a doctrine that is intended to discriminate against arbitration. It is not an indicia of a pattern. Roberts, so if we were to look to determine whether it is, surely that's a Federal question. Yes. If you were to ---- We agree that there is a backstop here, and it's an important backstop, and that is if you conclude that a court is just, you know, making it up and discriminating against arbitration, we think that's an important role for the Court to play. But the difference here is that the argument is that the State court really got this wrong and had an obligation to kind of presume that the parties wanted to engage in arbitration. That is a very, very, very different proposition of law because it asks the Federal courts to interject and the State courts to interject. But that's exactly what Voltz says, what Mr. Landau quoted, is due regard must be given to the Federal, in interpreting the contracts, we're talking about interpreting the intent of the parties, due regard must be given to the Federal policy favoring arbitration and ambiguities. We could ask whether or not this clauses in this statute is ambiguous. So the scope of the arbitration agreement must be resolved in favor of arbitration. Okay. There are two points about that. This was a State law contract, we're looking at State law principles, but there is a Federal rule that must be followed in making that interpretation. And that is a matter for us to review. Okay. There are two things about that. The first is, Justice Kennedy, the language that kind of trailed off in your sentence is that the Court has been very clear that ambiguities in the scope of an arbitration agreement have to be construed in favor of arbitration, and here's the reason. And that is, if we know these parties have agreed to arbitrate, this is in first options, it's in lots of cases. If we know you and I have agreed to arbitrate, so that there's an arbitration agreement, we're going to assume that all of the cases fall into the bucket of arbitrability, and that's a fair common-sense presumption. But what the Court said in Justice Thomas' opinion for the Court in Granite Rock is that the question of whether there's an enforceable arbitration agreement at all is not — is a State law question, not a Federal law question, and here's the reason. There are two interpretive principles under the Federal Arbitration Act. Number one is we want to only require people to arbitrate when they have — we are convinced under their State law contract they did intend to arbitrate. We can't presume that you and I intend to arbitrate, because that's the question we're asking. And the most important thing for you to understand about the nature of this Section 9 in the contract is that it does determine whether there's going to be any arbitration at all in California. That is to say, is there any agreement between DirecTV and its California consumers to arbitrate? And I can point to — it's very important that you understand that. Kagan I guess I just don't understand that, Mr. Goldstein, and maybe it's the same question that Justice Scalia asked. I don't see why it's better somehow to discriminate against arbitration by declaring arbitration agreements unenforceable writ large than it is by narrowing the scope of arbitration agreements unfairly. Goldstein Okay. There are two just — there are two rules at stake. When it comes to the question of whether you and I have an arbitration agreement at all, what the Court has said is two things. One is, this is going to be a matter of State law, but of course, if all you're doing is this is a game, you're just trying to evade enforcing the Federal Arbitration Act, that's a — you know, that's a role for the Federal courts. What Mr. Landau is relying on, and what the language that's quoted from Vold, it comes from Moses H. Cohn, is talking about, is something quite different, and that is, construe every ambiguity in favor of arbitration. That's what I'm resisting, not that — Breyer No. What he'll say, I think, is — we certainly pressed him on it enough — is that the — read the sentence, the relevant sentence, if the law of your State would find the agreement to dispense with class action procedure unenforceable, then the entire Section 9 is unenforceable. All right? That's what it says. Now, would the law of California find the agreement to dispense with class action procedure unenforceable? The answer to that question is clearly no. Because they did have a law like that, but it was invalid. So in order to read this in your favor, you'd have to say these words, if, however, the law of your State would find this agreement, you have to read it as saying, if, however, the invalid law of your State would find this agreement to dispense with class action unenforceable, then. Now, nobody — it's very hard to say that the parties meant, if the invalid law of your State would find it, and, therefore, contract interpretation is a question of law. This question of law was decided by California to read the word law as invalid law. There is no case in California or anywhere else to our knowledge that has interpreted contracts in such a way out of the arbitration context, and, therefore, this rule of law interpreting this word this way is discriminating against arbitration. That's something like what the argument he's making. Your answer to that is? First, is that there is no administrable line that he can identify between something that's wrong and really, really wrong. But in any event, it's not — it's not correct that the contract is improperly interpreted. Here are the reasons. The first is that, Justice Breyer, if you and I have a contract that says, if California law would prevent us from having a class action waiver, we will not arbitrate at all. That is not preempted. That's the second holding of Volt. Remember, all AT&T v. Concepcion is, is a rule that says, if California forces us to engage in class action arbitration, but you and I can agree to anything at all, this contract, when it says, if the law of your State would find the class action waiver invalid, is a perfectly fine thing for us to agree to. That's State law, and it even accounts for preemption, because the FAA does not preempt California law in that circumstance. In any event — Breyer, does California have a law, a valid law, that would find the agreement to dispense with class action unenforceable? Does it or doesn't it? It does. It does. It does. In other words, California now has a law that makes it okay to dispense with class action procedures. In several respects. The first is there are several cases, an array of cases that aren't subject to the Federal Arbitration Act. And the second is if you and I agree to follow that law, it is not preempted. Let me also point to some other indicia that's going to make it very hard for me to agree. Kennedy, you have to agree with Justice Breyer, or do you not, that California interpreted this contract as saying, if there is an invalid State law that prohibits arbitration, then that's binding on us. Okay. That's what you're saying. We don't, Your Honor. So, remember, my point is this. If you and I have a contract to follow that State law, which is this is a contract, then it's not invalid, because concepcion and preemption only apply when the State forces you to do something. But in all events. Well, sure, the parties can do anything they want, but the question is, did the parties do what they want to do? Did the parties do that here? Right. And, Your Honor, my problem is that that's going to be the question in every case. And if we say we're going to reverse this decision, then every time there's going to be a Federal question about whether this is really what the parties intended, that every time that the contract is ambiguous under State law. But I did have a couple of other things. That's one horrible, and the horrible on the other side is, if we agree with you, the States can do whatever they want to invalidate arbitration agreements, so long as they're doing it under the guise of contract interpreting. Is that not also a horrible? It is a possible horrible. Justice Scalia, so let me just give you the choice between the two of them. There is no evidence that the latter is actually happening. And you do have the backstop, and that is, we fully agree that if you conclude that a State court is just making it up and discriminating against arbitration, the FAA has a role to play. What I'm saying to you is that they do, in truth, want a different legal rule, and that is, you've got to construe these in favor of arbitration. That's the principle that he's trying to derive from Volt, Your Honor. That's a whole other kettle of fish than the backstop that you and I are talking about. Alito, if we see a State court opinion that doesn't say anything that is explicitly against arbitration, but it interprets a contract in such a strange way that the only possible explanation for the interpretation is hostility to arbitration, can that be invalidated? I think so, Your Honor. And so that's the question, is does this case fall into that category? All right. If that's what the question is, because that is not the Volt principle, that is the Volt principle, it's just wildly out of bounds. It's the incredibly fact-bound question about whether this one decision is wildly out of bounds. So let me talk about the other reasons it's not remotely, wildly out of bounds. Because if you write an opinion about anything other than the legal rule you just articulated, Justice Alito, we are going to be in an incredible crisis. Kennedy, Well, you say that's not the Volt principle. Why isn't it the Volt principle? Ambiguities. I mean, this is even more than an ambiguity. Even ambiguities have to be resolved in favor of arbitration. And this is more than an ambiguity. Okay, Justice Kennedy, because in my — I may be mistaken, but I think that you and Justice Alito are describing two different legal rules. Justice Alito is saying, as I understand it, and I don't purport to speak for the Justice, obviously, is that if this is a crazy decision, it's invalid under the FAA. The ambiguities construed in favor of arbitration principle is an ordinary interpretive principle. And the reason, Justice Kennedy, just to bracket this, why the Volt principle, the Moses H. Cohn principle, doesn't apply here, and that is that it's ambiguities in the scope of an arbitration agreement. Here the question is whether the parties had an arbitration agreement whatsoever. So we — I think we've now agreed on the legal rule, perhaps. And so let me tell you, if I could, why I don't think you can write an opinion that says this is nuts. And to add to that, what did the Ninth Circuit say about this? The Ninth Circuit said it was absurd. Was that the word? Yeah, it was nonsensical. Okay. Nonsensical. If we agreed with the Ninth Circuit that it was nonsensical, we could do it. I mean, I just don't want to — I don't want to play around with words, Your Honor, about nonsensical or not. I think you and I are basically on the same page about the FAA principle. Here's what I have in terms of why this is not remotely outside the bounds, why, if you write an opinion reversing here, you are going to invite an enormous amount of second-guessing of State law contract interpretation. The first is that Section 10 of the contract expressly contrasts State and Federal law. That is, it says the law of your State and then distinguishes Federal law from that. The second is, as Justice Ginsburg says, why is it the parties even refer to State law at all if what they are talking about is just it would be invalid? The third is, both before this contract and after this contract, DirecTV wrote this contract very differently in the way that it now says this contract means, and it says if it would be found invalid, and as was mentioned in the first half hour, every other Fortune 500 company wrote it that way as well. So there are a whole series of very good contrasts for us. I also have what I think is the pushback to the intuition that DirecTV really must have always intended for the contract to pick up Federal preemption law, and here's the reason why that's not right. DirecTV claims and has applied the power to unilaterally change this contract, and that is a huge deal in the context of a national form contract. Here's what happened here. DirecTV put this into the contract in 2006, before AT&T v. Concepcion was a glimmer in that time that California's Consumer Legal Remedies Act was going to control and was going to prevent any arbitration in California whatsoever. DirecTV filed an amicus brief in Concepcion saying we will not arbitrate with anyone in California before the Court's decision in Concepcion. And the way that DirecTV intended to account for changes in the law is that they would change the contract unilaterally when the law changed, and I can prove it. In the wake of Concepcion, DirecTV rewrote the contract. It did it before the California Court of Appeals' decision in this case. DirecTV had another mechanism fully available to it that would account for the idea that now, under the Federal Arbitration Act, the State can't forbid class action waivers. It didn't need this contract to do anything other than to pick up existing California law, and I will add a couple of other points just about whether it's a matter of Federal law you would want to say that right now we have to go to arbitration. Remember, DirecTV's position is in the teeth of the efficiency of the Federal Arbitration Act. Its view is that the parties intended that three years into the litigation, what they would want is to blow up the litigation and send everybody to thousands of individual arbitrations. That is an extremely implausible interpretation of what the parties would want if their goal was to have an efficient dispute resolution mechanism. And so the point that I'm trying to make, Your Honors, is I am sympathetic to the concern, and it may be a concern directed at California in particular, that we need to be attentive to whether or not those courts are discriminating against arbitration. My point to you is that you may believe this is wrong, like you were concerned in Oxford Health that the arbitrator had got it wrong, but you have to adopt a legal rule here, and there are too many points in favor of the California Court of Appeals' decision to say that this is wildly out of bounds and have an administrable legal rule that the lower courts can actually apply. You can say it's way out of bounds. You can say it's nonsensical. But then the lower courts are going to look at what happened here, and they are not going to view it as something that is just wildly impossible. Roberts. I guess I don't understand why it's a question of way out of bounds or slightly out of bounds. It's a question of whether it demonstrates hostility to arbitration.  It's not a question of way out of bounds or way in bounds. It may be a hard question in some cases, it may be easy in others, but it's a very simple question of what the rule is. The rule is, does it demonstrate hostility to arbitration contracts? Goldstein, Mr. Chief Justice, let me just distinguish this case from the one that you granted in the long conference, which is the factual scenario that you just described. In that context, what you have is an arbitration agreement. You know that the parties have agreed to arbitrate, and what you then do is assume that they intend the arbitration to be effective. This is importantly, doctrinally, a very different case. Roberts.  Arbitration agreement says you're going to arbitrate workplace disputes, but not safety disputes. And if there's an issue, is this a safety dispute or not, that's covered by the arbitration agreement. The arbitrator decides that. If you have a contract that says you agree to arbitrate with all of our subsidiaries except the one that does this, that's not for the arbitrator, because you have to decide if that other subsidiary has agreed or not. Now, this one talks about methods of arbitration. It doesn't seem to me to be covered by either of those two paradigms. Goldstein. So you've just described PrimaPaint and the assignment between the court and the arbitrator. Here is why it is in the paradigm of not favoring, not presuming arbitration, and that is the effect of this contract, Your Honor, the effect of section 9, is not to determine, this was just a Sotomayor's question about whether there would be some arbitration in California, but just not class arbitration. The effect of this provision is to mean that there will be no arbitration between DirecTV and any of its customers in California at all. There is no agreement to arbitrate any dispute. And let me just give you the proofs of that. They filed and they filed an agreement. Roberts Well, but just to put it, there is an agreement to arbitrate some disputes between DirecTV and its customers. Goldstein, Your Honor. It's the arbitration agreement. Goldstein, Your Honor, so if I could just distinguish. There is an agreement on the subject of arbitration, that is to say section 9 is in the contract. What section 4 of the Federal Arbitration Act asks is, is there an agreement with to resolve any disputes by arbitration? And what section 9 tells you in the States where it is effective, where the, what we call the blow-up clause takes effect, is that in all of those States, DirecTV will not arbitrate with individuals. It will not arbitrate with respect to class arbitration. If I could just give you the reasons we know that's true. DirecTV filed an amicus brief in Concepcion saying we do not arbitrate with anybody in California. It then, and you can see this in the Stevens Declaration, in opposition to the motion to compel arbitration, said we have gotten 215 small claims requests related to these early termination fees, which is in court, which is the subject matter of our complaint, and we have arbitrated with one party. So what was going on, so in California, DirecTV was arbitrating with no one whatsoever because of this contractual provision. And that brings it not within the Volt principle, Your Honor, of we interpret when we have an arbitration agreement, we're going to put things into the bucket, Your argument, Your point, Your Honor, about scope when it comes to safety disputes, but rather within Granite Rock, which said quite expressly, when we are talking about the antecedent question, we're trying to figure out if you and I have agreed to arbitrate any subjects whatsoever. When we're in that circumstance, we can't presume that we are arbitrating, because the first principle of the Federal Arbitration Act is to not force people to arbitrate when they haven't intended and to require people to arbitrate when they have. So, Justice Kennedy, the distinction I was drawing with Justice Alito is, if we had an arbitration agreement, and we were trying to figure out if, say, class cases were in and individual cases were out, it would make a little bit more sense to say we're going to presume and resolve ambiguities in favor of putting class cases in. But this is not that situation. It is the question whether we are going to arbitrate with anyone. Now, that is not to say that Federal arbitrators may be, but that's quite different from the question of whether there was an arbitration agreement. Certainly, whether there was an agreement in the first place is quite different from what the meaning of the agreement is. And the courts decide the first thing, and it's not the arbitrator. But this is not a – there is no doubt here that there was an agreement. There is no doubt that there was an agreement. The only issue is a matter of interpretation of that agreement, whether a provision of the agreement blew it up. Okay. Justice Scalia, what I am saying is you and I agree, but the consequence of the place we disagree is important. That is, you and I agree that this is in the contract. We have a contract on the subject of arbitration. When this Court has said that we will construe arbitration agreements and their scope to include all the subject matter, that is, we will construe them in favor of arbitration, it has been doing so. When we not only have an agreement on the subject of arbitration, but we have an agreement to arbitrate some disputes. Breyer. They may have. They may have. And I just don't want – I want to give you one other issue, because it's in my mind, and I'd like you to respond to it if you wish, because I think there's some pretty good arguments that this particular interpretation, for – unconsciously or unconsciously, is flying in the face of an opinion of this Court which I disagreed with. That was an opinion that said that this particular provision of California law is invalid. I dissented. All right. So we have on the one hand the risks that we'll get into too many State law cases if we take their side. On the other hand, there is the risk that they'll run around our decisions. Now, when you get to that second thing, even though I dissented, I think it's an extremely important thing in a country which has only nine judges here and thousands of judges in other places who must follow our decisions, and think of the desegregation matters, et cetera, that we be pretty firm on saying you can't run around our decisions, even if they're decisions that I disagree with. Okay? Now, I raise that because I think it is a factor, and so I would like you to – to say whatever you want. Justice Breyer, there's one threshold point that needs to be made, and that is five members of the Court in Concepcion, as I understand their opinions, would not have applied Concepcion in this circumstance. They would not extend it here whatsoever, because the four members of the Court who – you and the other members of the Court who agreed with it would not extend it to the circumstance in which the parties have agreed by contract. And Justice Thomas explained in his opinion in that case that the opinion there – that the principal opinion depended on obstacle preemption, and there is no argument here that this case implicates obstacle preemption because it's a question of contract law. So at the threshold, I don't think Concepcion would apply here at all. But your question is bigger, and that is, look, I'm concerned that if we as the Supreme Court – U.S. Supreme Court articulate a question of Federal law, particularly on a statute that's as important as the Federal Arbitration Act, particularly on a statute that is – is rooted in a concern about hostility of the State courts, we have to show people that we're serious. A couple of things about that. First is we know that California courts are serious. In the wake of – excuse me, we have filed a supplemental brief. The California Supreme Court has decided a case called Sanchez, and Sanchez dealt with the contract that is written like every other Fortune 500 contract is, and it talks about if the provision barring class action waivers would be deemed invalid. And the California Supreme Court said that's controlled by Concepcion. That is an enforceable arbitration agreement right there. And so now we are dancing on the head of the pin about one contract that's entirely defunct, and the question of whether the reference to State law, when contrasted in another provision of the contract with Federal law, is so far out of bounds. I think what you have to do is compare two prospects, Justice Breyer. One is the concern, and we recognize the concern, that if you write an opinion that says, no, we're not going to take too hard a look, that the State courts will run wild. All I can tell you is that there really isn't evidence of that happening at all. And the Court has doctrines like discrimination against arbitration that can handle it. The second is a reality. We know for a fact that if you announce an opinion that says this interpretation of State law, because we know what California law is here, the California Court of Appeals has told us, this interpretation of State law is just too bad and invalidated my arbitration agreement, that's now a question of Federal law, and we are going to relitigate what State law means. That is a boundless rule that is going to be invoked in every single arbitration case. And so you just have to choose between those two prospects. One is you know what will happen. You will be going against the very first principle of Federal arbitration law, which is that we look to State law in determining whether an arbitration agreement is formed, or you have the hypothetical prospect. And what I can say to you, Your Honor, is we have a legislature that is there in the event that the hypothetical prospect comes to pass. We have doctrines to deal with this. I am just terribly worried about how it is that you write an opinion that says this is not just wrong, it's really, really wrong, and explain why in the face of the other things in this contract, the contrast with other contracts that I have given you are out there. You do retain the possibility, of course, of not deciding the case at all in the wake of Sanchez. Why it is that we need to have an opinion about this, given that this is a contract that doesn't exist anymore and the California Court of Appeals has resolved it, is a question that is, you know, very difficult to answer. But if you are going to write an opinion in the case, please do not do it in a way that just invites litigation upon litigation upon litigation, because you, as in Oxford Health, are concerned that this Court got it wrong, just like you were concerned that the arbitrator got it wrong. It is an unfortunate cost of the Federal system that Congress decided this is the job of the Federal courts. Not everything is a Federal case, if there are no further questions. Roberts. Thank you, counsel.  Landau, thank you, Your Honor. I would like to make three very quick points. First, the fact that opposing counsel, my friend, started with Oxford Health is very telling, because Oxford Health was a very different case about the scope of this Court's review of an arbitrator's decision. Everyone there agreed that the parties had delegated the question of the interpretation of the clause to the arbitrator. And that's a very different question. We don't have that here. We are — in this case, this Court is reviewing what a court did. You are not reviewing it under the arguable standard. It's a very different standard. Second, my friend said that, well, no question that special rules for arbitration would be preempted as discriminatory. And, again, those tend to be easy cases. You are not probably seeing as many of those cases anymore. But now this case, in a sense, shows that there is a new frontier, when a court will just basically reach the same goal by saying black means white. Guess what? I haven't done any different rule. I'm just applying State court principles of interpretation. But at some point, you can't just have a rule. Sotomayor, why — everybody is assuming that this is just a crazy interpretation. But if you start with the proposition that it's the intent of the parties, and everybody is framing this as invalid State law, or valid State law, but your own company decided before Concepcion that it was okay, they would litigate everything. They would take the words as they stood. Because prior to Concepcion, State law was valid. The question is, when we said — No, it wasn't. If it was preempted, it was preempted back then. Well, Your Honor, again, it would have been futile to make that argument. In fact, we would have been subject to punitive damages. I mean, we were just taking it at its word. Well, they could have done what happened here and bring it up to the Supreme Court. Well, again, hats off to AT&T for doing that. But there are futility doctrines that recognize that not every litigant has to do that. And how far does this go? When do we make this judgment? Again, Your Honor, you could decide this case on the ground, as the Chamber of Commerce urged in its amicus brief, that this is so far beyond the pay less interpretation that it can only be explained as discrimination. Again, discrimination is — it is an existing category for knocking things down. It's not the exclusive category. And I think discrimination becomes a hard principle to apply when you have individual contracts. Because somebody can always say, well, you know, my — you know, discrimination anticipates you have two things that are similarly situated. So how can you say you're discriminating? Again, I don't know. Sotomayor, why is it that it's so far-fetched? It's so far-fetched. It's the legitimacy of this action at the time the complaint is filed, as opposed to three years later, or the day before a trial, or the day after a trial before judgment is entered. Because the parties used to do that. If you could come in and make a motion at any of those times, why does the interpretation of the contract have to be at the time that you make your motion? Because they used the verb tense would fine-dryer. They didn't say if State law right now. They didn't freeze it in place. There's nothing — and they have no way of saying when it would be frozen in place. Just a — in a sense, this is the ultimate gotcha kind of case. And the question before this Court is, is this Court going to basically give a stamp of approval to a gotcha? The last point I want to make is that the other — my friend says that there's a question here about whether there was an arbitration agreement in the first place. There is absolutely no question that there's an arbitration agreement. The California court of appeal acknowledged that there was an arbitration agreement and construed it to be self-defeating, construed there to be a blow-up provision that destroyed what the parties were trying to accomplish. Thank you, Your Honor. Roberts. Thank you, counsel. The case is submitted.